UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
BORIS ALEXEEV, *pro se*,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Petitioner,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　　**MEMORANDUM AND ORDER**
　　　　　　　　　-against-　　　　　　　　　　　:　　　10-CV-3968 (DLI)
　　　　　　　　　　　　　　　　　　　　　　　　　:
UNITED STATES OF AMERICA,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Respondent.　　　　　　　:
----------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

　　　　Boris Alexeev ("Petitioner") was convicted, upon his plea of guilty, of Hobbs Act robbery and conspiracy to obstruct justice. On March 19, 2008, this Court sentenced him to 168 months of incarceration, followed by three years of supervised release. (Sentencing Tr. at 43, Docket No. 04-cr-1041,[1] Doc. Entry No. 415.) Petitioner timely appealed. On May 29, 2009, the Second Circuit Court of Appeals ("Second Circuit") affirmed the judgment of this Court. *See United States v. Grabsky*, 330 F. App'x. 259 (2d Cir. 2009). A writ of certiorari to the Supreme Court was denied on October 13, 2009. *Alexeev v. United States*, 558 U.S. 957 (2009).

　　　　On October 12, 2010, Petitioner, proceeding *pro se*,[2] filed the instant Petition challenging his sentence pursuant to 28 U.S.C. § 2255. (*See generally* Petition ("Pet."), Doc. Entry No. 1; Memorandum of Points and Authorities in Support of Petition ("Mem."), Doc.

---

[1] All references to "Docket No. 04-cr-1041" are to the criminal case docket underlying the instant Petition.

[2] In reviewing the Petition, the court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court interprets the Petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

Entry No. 2.) Petitioner contends that he received ineffective assistance of counsel during his plea allocution, sentencing, and appeal. (Mem. at 3-4.) Petitioner seeks an evidentiary hearing and resentencing. (Mem. at 5, 33.)

For the reasons stated below, Petitioner's Section 2255 Petition is denied in its entirety.

## BACKGROUND

### I. Indictment and Plea Hearing[3]

On December 21, 2005, Petitioner pled guilty before the Honorable Sandra L. Townes, pursuant to a plea agreement, to Counts Ten and Twelve of the Tenth Superseding Indictment. Counts Ten and Twelve charged Petitioner and other members of the "Passage Crew" criminal enterprise with the commission of Hobbs Act robbery and conspiracy to obstruct justice in January 2003. (Plea Transcript ("Plea Tr.") at 10, 15-17, 19, Docket No. 04-cr-1041, Doc. Entry No. 339; Indictment ¶¶ 119, 121, Docket No. 04-cr-1041, Doc. Entry No. 256.) At the time of his plea allocution, Petitioner was represented by Thomas J. Sullivan, Esq. ("Sullivan"). (Pet. at 6.)

The Tenth Superseding Indictment also charged Petitioner with several crimes to which he did not plead guilty, including, in relevant part, racketeering (Count One) and racketeering conspiracy (Count Two). (Indictment ¶¶ 8-9, 108-109.) Among the predicate acts alleged in support of Counts One and Two was the attempted extortion of Jane Doe #1 (*id.* ¶¶ 13-15), for which Petitioner had already completed a 30-month sentence of imprisonment (the "prior conviction"). (Mem. at 2.)

---

[3] The Honorable Sandra L. Townes, United States District Judge, originally presided over the underlying criminal action, sentencing Petitioner to 168 months of incarceration, followed by three years of supervised release. (*See* Judgment, Docket No. 04-cr-1041, Doc. Entry No. 321.) This matter was subsequently remanded to this Court by the Second Circuit for resentencing when the government admitted error for having advocated a particular sentence in violation of the plea agreement. (*See* Mandate, Docket No. 04-cr-1041, Doc. Entry No. 366.)

The plea agreement indicated, *inter alia*, that Petitioner would be subject to an estimated United States Sentencing Guidelines ("Guidelines") sentence range of 121 to 151 months' imprisonment, based upon an adjusted offense level of 31, and assuming Petitioner fell within Criminal History Category II. (Plea Agreement ¶ 2.) The plea agreement also provided that the estimated Guidelines range contained in the agreement was not binding on the government, the Probation Department ("Probation"), or the Court, and Petitioner would not be entitled to withdraw his guilty plea if the Court's determination of the Guidelines range was different than that provided by the plea agreement. (*Id.* ¶ 3.)

During the change of plea hearing, Petitioner, who had been placed under oath, confirmed that he had read and reviewed the plea agreement with his attorney and that he understood all of its terms. (Plea Tr. at 3-4.) When the court advised Petitioner that the court was not bound by the Guidelines range estimate contained in the plea agreement and that he would not be permitted to withdraw his plea if the estimate was incorrect, Petitioner affirmed that he understood. (*Id.* at 12.) Petitioner also confirmed he understood that he could be deported from the United States as a result of his guilty plea. (*Id.*) Additionally, Petitioner stated that he was satisfied with his attorney's representation. (*Id.* at 13-14). The court found that Petitioner fully understood his rights and the consequences of his plea, that Petitioner was acting voluntarily, and that there was a factual basis for the plea. (*Id.* at 18, 20.) Accordingly, the court accepted Petitioner's plea of guilty to Counts Ten and Twelve of the Tenth Superseding Indictment. (*Id.*).

II. **Sentencing and Direct Appeal**

On January 9, 2008, Probation disclosed the Presentence Investigation Report ("PSR"), in which Probation calculated a Guidelines sentencing range of 168 to 210 months, based on a total offense level of 34 and Criminal History Category II. By letter dated January 23, 2008, defense

counsel objected to the Guidelines range as calculated by Probation. (1/23/08 Let., Docket No. 04-cr-1014, Doc. Entry No. 387.) Specifically, defense counsel argued that a Criminal History Category of II was unreasonable because Petitioner's prior conviction was related to the crimes to which he had pled guilty in the underlying criminal case. (1/23/08 Let at 3.) Mr. Sullivan argued that Probation's estimated Guidelines range was incorrect because "the advisory guidelines contained [in the PSR] did not credit the 30 months of imprisonment [Petitioner] already served in connection with this case." (*Id.*)

Defense counsel also submitted a sentencing memorandum on March 12, 2008 in which he again argued that the Court should "credit the amount of imprisonment [Petitioner] . . . served in connection with [the prior conviction]." (Sentencing Mem. at 2, 12-16, 18, 25-27, Docket No. 10-cr-1014, Doc. Entry No. 394.) Defense counsel argued at length that the version of the Guidelines in place when Petitioner committed the crimes for which he was convicted in the underlying criminal case should be applied instead of the version of the Guidelines in place at the time of sentencing. (*Id.* at 34-52.) Specifically, Mr. Sullivan discussed, *inter alia*, the application to Petitioner's case of Section 5G1.3 of the Guidelines, which addresses when prior sentences must run concurrently with later sentences. (*Id.* at 48-52.)

At the March 19, 2008 sentencing hearing, Petitioner's attorney reiterated his argument that Petitioner's Criminal History Category calculation should not include his prior conviction for attempted extortion because it was relevant conduct under the Guidelines. (Sentencing Tr. at 25-26.) Mr. Sullivan also argued that it would be "unfair" not to factor the time Petitioner had already served for attempted extortion into his sentence. (Sentencing Tr. at 26.) After hearing arguments from the parties as to Petitioner's sentencing objections, the court found that Petitioner's attempted extortion conviction was not related to the crimes to which Petitioner had

4

pled guilty, because "[t]he prior offense did not occur during, in preparation for, or in attempting to avoid responsibility for the instant offense of commission. There is no connection between the two offenses." (Sentencing Tr. at 23-29.)

The court concluded that a total offense level of 32 and a Criminal History Category of II applied. (Sentencing Tr. at 23, 32.) Based on its consideration of the advisory Guidelines, the 3553(a) factors, and all of the facts and circumstances of this case, the Court imposed a term of imprisonment of 168 months, three years' supervised release, ordered restitution in the amount of $215,264.61, and imposed a $200 special assessment. (*Id.* at 43-44.)

Petitioner, represented on appeal by Marsha R. Taubenhaus, Esq. ("Taubenhaus") (Pet. at 7), raised several claims, including, *inter alia*, that Petitioner's sentence was substantively unreasonable because the district court failed to reduce his sentence to account for the time he had served for his prior conviction as relevant conduct. *See Grabsky*, 330 Fed. App'x at 262-63. On May 29, 2009, the Second Circuit rejected all of Petitioner's claims by summary order and affirmed the sentencing court's judgment. *See id.* The Supreme Court denied Petitioner's application for a writ of certiorari on October 13, 2009. *Alexeev*, 558 U.S. 957.

## DISCUSSION

### I. Ineffective Assistance of Counsel

The court must evaluate Petitioner's claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687-88. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, Petitioner must show "that there is a reasonable

5

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the second prong of the *Strickland* test is satisfied upon a showing by the defendant "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Petitioner claims that he received ineffective assistance of counsel because: (1) Mr. Sullivan and Ms. Taubenhaus failed to argue that application of the Guidelines version in effect at the time of sentencing violated the *Ex Post Facto* Clause of the United States Constitution (Mem. at 3-4, 9-29); (2) Mr. Sullivan failed to advise Petitioner that he could be subject to deportation by pleading guilty (Mem. at 30-31); and (3) Mr. Sullivan failed to advise Petitioner of his right to contact the Russian Consulate. (Mem. at 31-32.)

**II. Analysis**

    **A.**     *Failure to Argue* **Ex Post Facto** *Violation*

Generally, "a sentencing court should apply the version of the Sentencing Guidelines in effect as of the date of sentencing." *United States v. Boyle*, 283 Fed. App'x 825, 826 (2d Cir. 2007) (citing *United States v. Keigue,* 318 F. 3d 437, 442 (2d Cir. 2003)). However, the Supreme Court has held that the "*Ex Post Facto* Clause is violated when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher sentencing range than the version in place at the time of the offense." *Peugh v. United States*, __ U.S. __ , 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). In such situations, the *Ex Post Facto* Clause demands the use of the version of the Guidelines in place at the time the criminal acts were committed. *See United States v. Boyle*, 283 Fed. App'x at 826 (citing *United States v. Kilkenny,* 493 F. 3d 122, 126-27 (2d Cir. 2007)).

Petitioner contends that both Mr. Sullivan and Ms. Taubenhaus were ineffective for failing to argue that Petitioner should have been sentenced under the version of the Guidelines in effect at the time he committed the offenses to which he pled guilty (the "2002 Guidelines"),[4] rather than under the version in effect at the time of sentencing (the "2007 Guidelines").[5] Specifically, Petitioner argues that application of Section 5G1.3 of the 2007 Guidelines resulted in a higher sentence than would have resulted from application of the 2002 Guidelines. (Pet. at 4.) Petitioner also argues that "application note 7" of the 2002 Guidelines allowed the court to "credit" the time he had already served in connection with the prior conviction towards his sentence in the underlying case. (*Id.*)

For the reasons stated below, Petitioner has failed to show that application of the 2002 Guidelines would have provided a lower sentence than the 2007 Guidelines. Therefore, Petitioner has not shown that counsels' alleged failure to make the above arguments prejudiced him, as required by the second prong of the *Strickland* standard.

Section 5G1.3 of the 2002 Guidelines provides for concurrent sentencing with an undischarged term of imprisonment "[i]f . . . the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense . . . ." U.S.S.G. § 5G1.3(b) (2002). Similarly, Section 5G1.3 of the 2007 Guidelines requires concurrent sentencing with an undischarged term of imprisonment if that term of imprisonment "resulted from another offense that is relevant conduct to the instant offense." U.S.S.G. § 5G1.3(b). It is undisputed that Petitioner's term of imprisonment for the

---

[4] The 2002 Guidelines, promulgated on November 1, 2002, were in effect in January 2003, when Petitioner committed the offenses to which he pled guilty in the underlying criminal case.

[5] The 2007 Guidelines, promulgated on November 1, 2007, were in effect at the time of Petitioner's sentencing before this Court on March 19, 2008.

7

prior conviction was already discharged before he was arrested for the crimes of conviction in the underlying case. Thus, under either Guidelines version, Section 5G1.3 was inapplicable by its express terms.

Petitioner cites application note 7[6] of the 2002 version of 5G1.3, which provides that courts are permitted to downwardly departure if a defendant's prior term of imprisonment has been discharged, but would otherwise have met the requirements of 5G1.3(b). *See* U.S.S.G. § 5G1.3 app. note 7 (2002). However, application note 4 of the 2007 version of Section 5G1.3 provides the Court with the same discretion. *See* U.S.S.G. § 5G1.3 app. note 4 (2007). Additionally, Section 5K2.23 of the 2007 Guidelines allows for a downward departure where: (1) a defendant has completed serving a term of imprisonment and (2) Section 5G1.3(b) "would have provided an adjustment had the completed term of imprisonment been undischarged." U.S.S.G. § 5K2.23 (2007). Since the 2007 Guidelines provide the Court with the same discretion to downwardly departure as the 2002 Guidelines, the court's application of the 2007 Guidelines did not prejudice Petitioner.

Moreover, a downward departure under both application note 7 and application note 4 is available only if the requirements of Section 5G1.3, other than the requirement that the prior term of imprisonment be undischarged, are met. In this case, Section 5G1.3's remaining requirements were not satisfied under either version of the Guidelines. First, as noted above, under the 2002 Guidelines, a downward departure is available if the prior offense has been "fully taken into account in the determination of the offense level for the instant offense." U.S.S.G.

---

[6] The commentary accompanying the 2002 Guidelines, including application notes, does not have the force of law, but should be "treated as the legal equivalent of a policy statement." U.S.S.G. § 1B1.7 (2002). "Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal." *Id*. The same language is present in U.S.S.G. § 1B1.7 (2007).

5G1.3 (2002). To be "fully taken into account," "the prior offense must have been actually accounted for by the district court in calculating the defendant's offense level." *United States v Williams*, 260 F. 3d 160, 167 (2d Cir. 2001). Here, the prior offense was not considered in calculating Petitioner's offense level. (*See* PSR ¶¶ 26-47.) Although Petitioner's prior conviction was alleged as a predicate to Counts One and Two of the Tenth Superseding Indictment, Petitioner did not plead guilty to either of these charges, and the Court found that Petitioner's prior conviction was unrelated to the charges to which he pled guilty. (Sentencing Tr. at 23-29.) Additionally, although Petitioner's Criminal History Category was increased from I to II as a result of his prior conviction, the Second Circuit has found that an increase in a defendant's Criminal History Category does not qualify as "fully taking into account" a prior conviction. *See United States v. Garcia-Hernandez*, 237 F. 3d 105, 108-09 (2d Cir. 2000). Thus, Petitioner's prior conviction was not "fully taken into account" by the Court in determining offense level for the instant offenses. In other words, Section 5G1.3 of the 2002 Guidelines would have been inapplicable to Petitioner's case, even in light of application note 7.

Similarly, under the 2007 Guidelines, Section 5G1.3(b) provides for a downward departure where a prior conviction is "relevant conduct" to the instant offense. U.S.S.G. § 5G1.3 (2007). "Relevant conduct" is defined to include acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G § 1B1.3(a)(1)(A). The Court found that Petitioner's prior attempted extortion conviction was not relevant conduct to his instant offenses of robbery and conspiracy to obstruct justice. (Sentencing Tr. at 29.)

In sum, application of the 2002 Guidelines would not have resulted in a lower sentence in the underlying criminal matter. Under both Guidelines versions, the downward departure

provided by Section 5G1.3 was unavailable in Petitioner's case. Neither Mr. Sullivan nor Ms. Taubenhaus were ineffective for failing to make this meritless argument. *See United States v. Regalado*, 518 F.3d 143, 150 (2d Cir. 2008) (finding that "failure to make a meritless argument does not amount to ineffective assistance"). Thus, Petitioner has failed to meet either prong of the *Strickland* standard.

Accordingly, Petitioner's claim that counsel was ineffective for failing to argue that the Court should have applied the 2002 Guidelines in sentencing the Petitioner is denied as meritless.

B. *Failure to Advise about Deportation*

Petitioner's claim that Mr. Sullivan was ineffective for failing to inform him that he could be deported as a result of pleading guilty to the instant offenses is unavailing.

Regardless of the content of any communications between Petitioner and Mr. Sullivan, Petitioner made clear, under oath, at his plea allocution that he was aware of the possibility of deportation based upon his instant convictions upon being so advised by the court. (Plea Tr. at 12.) *See United States v. Juncal*, 245 F. 3d 166, 171 (2d Cir. 2001) (recognizing that plea allocution testimony "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"); *see also United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (holding that, where a Petitioner's "specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, . . . the issue is whether [Petitioner] was aware of actual sentencing possibilities"); *Wang v. United States*, 2011 WL 73327, at *5 (E.D.N.Y. Jan. 10, 2011), *aff'd*, 458 F. App'x 44 (2d Cir. 2012) (finding that the prejudice prong of the Strickland standard could

not be established where the court advised the defendant of the consequences of his plea). Thus, Petitioner has not shown that but for Mr. Sullivan's alleged failure to mention the possibility of deportation, Petitioner would not have pled guilty and would have insisted on going to trial. Therefore, Petitioner did not suffer any prejudice, as required by the second prong of the *Strickland* standard, from Mr. Sullivan's alleged omission.

Accordingly, Petitioner's claim that counsel was ineffective for failing to advise him of the possibility of deportation is denied.

### C. *Failure to Advise Petitioner of his Right to Contact the Russian Consulate*

Petitioner's claim that counsel was ineffective for failing to inform him of his right to contact the Russian Consulate under Article 36 of the Vienna Convention ("Article 36") is similarly without merit.

Article 36 "addresses communication between an individual and his consular officers when the individual is detained by authorities in a foreign country." *Sanchez-Llamas v Oregon*, 548 U.S. 331, 337 (2006). Since "the purpose of [the] privileges and immunities [created by the Vienna Convention] is not to benefit individuals but to ensure the efficient performance by consular posts," *United States v. De La Pava*, 268 F. 3d 157, 164 (2d Cir. 2001), it is unclear whether Article 36 is the source of any individually enforceable right. Moreover, the text of Article 36 does not place any obligation on an attorney to inform his client of his right to contact his consulate. *See* Vienna Convention on Consular Relations, Art. 36, 1969 WL 97928.

Courts in this Circuit routinely have found that failure to inform a client of his rights under Article 36 does not constitute ineffective assistance of counsel under the first prong of *Strickland*. *See James v. United States*, 2006 WL 2850193, at *4 (S.D.N.Y. Oct. 5, 2006) (finding that because a petitioner was represented by counsel, he "received all of the benefits that

11

he claims consular notification would have provided him"); *Alcantara v. United States,* 2003 WL 102873, at *3 (S.D.N.Y. Jan. 10, 2003) (noting that Article 36 is intended to "ensure that a foreign national charged with a violation of American law is visited by an official representative of his native country who can explain to him his rights as a criminal defendant in the United States, most notably his right to legal counsel"); *United States v. Arango*, 1999 WL 1495422, at *3 (E.D.N.Y. Dec. 29, 1999) (finding that "a defense attorney cannot be labeled ineffective for failing to advise his client of the right to speak to a diplomatic official who could do no more to protect his rights than counsel himself").

Moreover, even assuming, *arguendo*, that counsel's failure to inform Petitioner of Article 36 could be considered unreasonable, Petitioner has failed to show prejudice. Petitioner has not demonstrated that, had he been informed of his right to contact the Russian Consulate, there is a reasonable probability that he would have contacted the Russian Consulate and that the Russian Consulate could have rendered assistance beyond that provided by Petitioner's attorney. As such, Petitioner fails to meet the second prong of *Strickland*.

Accordingly, Petitioner's claim that counsel was ineffective for failing to inform him of his rights under Article 36 is denied.

## CONCLUSION

For the reasons set forth above, Petitioner's request for relief pursuant to 28 U.S.C. § 2255 is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      March 27, 2014

/s/
DORA L. IRIZARRY
United States District Judge